HOOD, Judge.
Plaintiff, Frank Vercher, by this action seeks to set aside a sheriff’s sale of his house and lot, to annul as a simulation a subsequent sale of that property, and to recover damages alleged to have been sustained by him as a result of his wrongful eviction from premises occupied by him as a .residence. The defendants named in the suit are Henry A. Reid, Jr., Sheriff of Calcasieu Parish, Nolan Cormie, the purchaser at the sheriff’s sale, and Willard J. Francois, the vendee in the deed which plaintiff seeks to annul. After trial on the merits, judgment was rendered by the trial court in favor of defendants dismissing the suit, and plaintiff has appealed from that judgment.
The evidence shows that on April 25, 1957, Home Finance Service, Inc., obtained a default money judgment against Vercher in a suit entitled “Home Finance Service, Inc. vs. Frank Vercher,” which had been filed in the Fourteenth Judicial District Court. A writ of fieri facias was issued under that judgment, and pursuant to that writ a house and lot owned by Vercher and described as “Lot Twenty four (24) of E. F. Gayle Subdivision of Block Ten (1Ó) of Libbyville Subdivision,” in Calcasieu Parish, was seized and was advertised for sale on July 31, 1957. At that offering no bids were received for two-thirds of the appraised value of the property, so the property was not sold. It was again advertised for sale without appraisement on August 28, 1957, and on that date the property was adjudicated to defendant Cormie, as the last and highest bidder, for $500.00. Vercher did not at any time file a claim for a homestead exemption, and he did not attend the sheriff’s sale.
Following the adjudication, Cormie obtained an order of the district court commanding the sheriff to place him, as the adjudicatee, in possession of the property. This order was executed by a deputy sheriff on December 9,1957, at which time Vercher was dispossessed and all of his furniture and belongings were removed from the premises. About seven months later, on July 10, 1958, Cormie executed an act of sale purporting to sell the property to defendant Francois for a price of $7,500.00. Sometime thereafter the property, and some adjoining tracts, were expropriated by the State for highway purposes, and the buildings located on these tracts were removed.
Plaintiff urges a number of grounds upon which he bases his demand for judgment annulling the sheriff’s sale. As one of such grounds he contends that he received no notice of the seizure and of the date on which the property was to be offered for sale. The record shows that the writ of fieri facias was issued on June 13, 1957. On the following day domiciliary service of the notice of seizure and date of offering for sale, and notice to appoint an appraiser, was made by Deputy Sheriff R. V. Kirk, the service being made by delivering the notice to a person living in the house, whose name appears on the return as “Morlline Vercher.” A .return, in proper form, was promptly made. Plaintiff contends that no such person lived on the property. Plaintiff’s wife, whose name is “Maggie Lee Vercher,” did live on the property, however, and we are convinced that the notice was actually delivered to. her, and that the return of such service *820 contains a reasonably accurate phonetic spelling of her given name.
Immediately after the first unsuccessful offering by the Sheriff, a notice of seizure and of the date scheduled for the second or postponed sale was issued and served. Deputy Sheriff Henry Little served this notice on Vercher, personally, on August 1, 1957, and a return of service in proper form was promptly made.
We are convinced that Vercher was properly and timely served with notice of seizure and of the dates scheduled for the offering of such property for sale, and that there is no merit to his contention that he received no such notices. In view of this conclusion it is unnecessary for us to consider defendant’s argument that plaintiff is barred by LSA-k.S. 13:3471(17) from attacking the returns of the sheriff’s office, because of the fact that no direct action attacking those returns has .been filed in the same proceeding.
Plaintiff further contends that although he owned Lot 24 of the E. F. Gayle Subdivision at the time of the sheriff’s sale, he had built his home and was living on Lot 25 of that subdivision, which lot is located adjacent to and immediately south of the property which was adjudicated at that sale. He contends that the domciliary service of the notice of seizure and sale made on June 14, 1957, was void because it was not made on a person living in the house which was located on Lot 24. He also contends that he is entitled to damages because he was wrongfully evicted from property which defendant Cormie did not own.
There is no merit to plaintiff’s argument that service of the notice was void, because the law at that time merely required that ■.domiciliary service on a person be made “at the domicile of said person” or “at his place of ordinary residence.” C.P. Articles 186.1 and 654; LSA-R.S. 13:3471 (8). (See also, LSA-C.C.P. Articles 1234 ■and 2293). That was done in this instance, and it is immaterial whether plaintiff’s domicile was or was not located on the property which had been seized.
Plaintiff’s testimony to the effect that he was evicted from Lot 25, instead of Lot 24, is supported by that of a retired right-of-way engineer for the State Highway Department, who stated that he investigated this property in 1957 for the Highway Department and determined at that time that plaintiff was living on Lot 25. A number of other witnesses, however, including that of a civil engineer who surveyed the property for the Highway Department in June, 1957, and Lugenia Duhon who owned and actually lived on Lot 25, testifiéd that at the time of the sheriff’s sale and subsequent eviction plaintiff .resided on Lot 24, being the property which was actually seized and sold. The trial judge concluded .that plaintiff, at that time, was actually residing on Lot 24, and accordingly, that he had been evicted from the property which Cormie had purchased at the sheriff’s sale. We think the evidence clearly supports the conclusion .reached by the trial court.
Plaintiff further contends that no seizure was made of the property prior to the sheriff’s sale, that the appraisers were not sworn as required by law, and that the amount at which the property was appraised was grossly and completely inadequate. The evidence shows that the property was seized and that the appraisers were duly sworn as required by law, so there is no merit to plaintiff’s contrary contentions. On the date scheduled for the initial offering of the property for sale, the two appraisers who had been sworn for that purpose valued the property at $2,000.00. The property was not sold on that date because no bids were received for two-thirds of the appraised value. At the second sale, Cormie’s bid of $500.00 was the highest bid which was received. The fact that no higher bid was received, although the property had been offered at two public sales, indicates that the appraisal was not “grossly and completely inadequate.” Plain *821 tiff points out, however, that about a year later, in July, 1958, Cormie purportedly sold the property to Francois for $7,500.00. Shortly thereafter, expropriation proceedings relating to this property were instituted by the State, which proceedings show that appraisers for the Louisiana Department of Highways at that time valued the property at $5,658.00, and in the expropriation suit Francois filed an answer in which he alleged that the same property had a value of $12,000.00. Plaintiff contends that the later sale to Francois and the pleadings filed in the expropriation suit establish that the property had a value greatly in excess of $2,000.00 at the time it was appraised for the first sheriff’s sale in July, 1957.
Although the evidence indicates that Lot 24 had a value in excess of $2,000.00 at the time the expropriation suit was filed, we are unable to conclude from that fact that the appraisal was grossly inadequate more than a year before that when it was first offered for sale under the writ of fieri facias. There is no showing as to what changes may have taken place in the property or in the. development of that area during that period of time. The fact that in two public offerings in 1957 the highest bid received for the property was one-fourth the amount of the appraisal convinces us that at the time of those offerings the appraisal was not too low. We conclude, as did the trial judge, that the appraisal was adequate and that there was no defect in the sheriff’s sale of this property because of such appraisal.
Plaintiff contends next that at the time he was evicted from the premises his furniture was concealed from him or placed out of his reach, and that he has been deprived of the use of it since that time. The evidence shows that the writ of ejectment was issued on October 21, 1957, and on the same day Deputy Sheriff Little read it to Vercher and then personally served him with a copy of the deed of sale. Plaintiff refused to vacate the premises, however, so Deputy Sheriff Little executed the writ on December 9, 1957, by evicting him. At the time of the eviction, Deputy Little had plaintiff’s furniture hauled by truck to Gulf Furniture Company, located on Railroad Avenue in Lake Charles, where it was stored. He testified that he had it stored there, “rather than put it out on the street,” and that it was still stored with that company at the time of the trial. Although plaintiff says he was not present at the time of the eviction, his daughters were there and they carried most of the clothes and personal belongings to a house across the street. Plaintiff testified with reference to the furniture that, “I never found out what become of them. I went to the storage place and looked for them but they was nowhere there. A storage place I knowed was here in town. They wasn’t there.” It apparently is on the basis of this statement that counsel contends that plaintiff was deprived of the use of his furniture “without any knowledge of where same was.”
In our opinion, the evidence fails to show that plaintiff made any serious effort to locate or to .recover his furniture. His daughters must have known where the furniture was stored, because one of them testified that she was present when the eviction took place, and that “They taken the furniture, and I think it was a Gulf Furniture truck that took the furniture and put it in storage. That’s what I heard.” But even if this information was not conveyed to plaintiff by members of his family, a simple inquiry from the sheriff’s office is all that would have been necessary for him to obtain the information he needed, if he in fact wanted to get the furniture back.
Plaintiff contends that the deputy should have left his furniture “in the street,” so that plaintiff would have seen it when he returned to his home after the eviction and then would have had an opportunity to have moved it to another place. Such an argument has no merit whatsoever. It seems to us that the deputy exercised an unusually high degree of care to see that plaintiff’s furniture was not damaged, and *822 we find no fault on the part of the deputy as to the manner in which this furniture and belongings were handled. We think the trial court correctly .rejected the demands of plaintiff for damages based on the allegation that he has been deprived of the use of his furniture.
Plaintiff demands judgment for the value of some unattached plumbing fixtures which he says were left on the premises and were later sold by Cormie. Cormie denied that he found or sold any such fixtures. In our opinion, the evidence fails to establish a wrongful appropriation by Cormie of movable property belonging to plaintiff, and accordingly, we think the trial judge correctly .rejected plaintiff’s demand for the value of any such property.
Finally, plaintiff alleges that the sheriff’s sale to Cormie is void because it was “a collusion and frame up and should be set aside.” Although no facts are alleged to support this conclusion, counsel for plaintiff in his brief argues that defendants, apparently knowing that a state highway was to be constructed over this property, conspired to suppress bidding and the carrying out of this conspiracy enabled Cormie to purchase the property for a small fraction of its value. There is not one shred of evidence in the record to support such an argument. The evidence, in fact, shows that before the property was sold at sheriff’s sale, Deputy Sheriff Little on two separate occasions, aside from the times the notices were served, talked to Vercher personally and told him that he was in a serious position and that his home would be sold for a “couple hundred dollars,” and he advised Vercher to see his attorney about it. Vercher rejected this advice because he stated he did not owe the debt to Home Finance Service, Inc., and he “wasn’t worried at all about it.” In our opinion, the sheriff’s sale is valid, and the trial judge correctly rejected plaintiff’s demand that it be annulled.
Since plaintiff, by virtue of the sheriff’s sale, was legally divested of title to Lot 24 of the E. F. Gayle Subdivision, he is without interest to attack the later sale of the same property from Cormie to Francois. It is not necessary, therefore, for us to consider plaintiff’s claim that this later sale was a simulation and thus was void.
For the reasons herein assigned, the judgment of the trial court is affirmed. All costs of this suit are assessed to plaintiff-appellant.
Affirmed.